United States District Court
Southern District of Texas
**ENTERED**
December 19, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |
|---|---|
| Van Tran, | § § § |
| *Plaintiff,* | § § |
|   | § Civil Action No. 4:25-cv-00149 |
| v. | § § |
| Houston Housing Authority Corporation, | § § § § |
| *Defendant.* | § § |

## MEMORANDUM AND RECOMMENDATION

In this employment dispute, Defendant Houston Housing Authority Corporation ("HHA") filed a motion to dismiss Plaintiff Van Tran's third amended complaint (Dkt. 31) under Fed. R. Civ. P. 12(b)(6). Dkt. 32. After carefully reviewing the motion, Tran's response, Dkt. 33, HHA's reply, Dkt. 36, the pleadings, and the applicable law, it is recommended that HHA's motion to dismiss (Dkt. 32) be granted, and that Tran's claims be dismissed with prejudice.

## Background

The following facts are taken as true at this stage. Tran is an Asian American woman of Vietnamese national origin. Dkt. 31 at 2. She was employed at HHA, first as an Assistant Supervisor, and then as a Special Programs Supervisor from March 2023 until she was terminated on October 8,

2024. *See id.* at 2, 6. During this 16-month period, Tran alleges that she was subjected to an "escalating pattern" of harassing conduct. *Id.* at 2.

Tran complains of discriminatory conduct by co-worker Jackee Carney. Carney "repeatedly and intentionally" mispronounced Tran's name, *id.*; mocked Tran's accent in front of other co-workers, *id.*; told Tran and another Vietnamese coworker not to speak in Vietnamese, *id.* at 2-3; prohibited Vietnamese employees from contributing traditional foods to workplace celebrations, *id.* at 3; and exercised discretion in a discriminatory manner over employee leave and holiday pay approvals, *id.* Tran describes two verbal altercations with Carney, one culminating in Carney calling her "lazy" in front of co-workers. *See id.* at 3, 4. Tran also claims that Carney and co-worker Rakesha Thomas "sabotaged" her work product by intentionally providing incorrect instructions. *Id.* at 3. That conduct allegedly led Tran to seek support through the Employee Assistance Program, *id.* at 4-5, and to take leave from February 5 to April 26, 2024, *id.* at 4.

Tran sought recourse through her direct supervisor, Gilda Jackson, HR representatives, and HHA senior executives. *See id.* at 7. She maintains that management and HR failed to intervene, protect her, or take corrective action. *Id.* at 6-7. On October 25, 2023, Tran reported the incidents to Jackson, but Jackson did not follow through by setting up a meeting between Tran and Carney. *Id.* at 3-4. On November 20, 2023, following an altercation where

2

Carney called Tran "lazy" in front of other employees, Tran requested and was denied a meeting with Jackson. *Id.* at 4. Tran sought to address her grievances with HR. *Id.* But instead of investigating, HR suggested Tran consider stepping down, which she did not do. *Id.* Later, Tran filed a Level 1 Grievance with the Senior Vice President of Administration at HHA. *Id.*

On August 28, 2024, Tran met with HR Administrator Justin Lee and Jackson, and Tran was issued a verbal reprimand for telling a staff member to seek assistance from an assistant supervisor before coming to Tran, even though Tran says that was protocol. *Id.* at 5. According to Tran, the assistant supervisor, who is African American, was not reprimanded. *Id.*; Dkt. 33 at 5. After a series of hostile meetings with Lee in September 2024 where Tran was accused of "dishonesty without evidence," Tran was placed on administrative leave on September 19, 2024, for allegedly disclosing confidential information. Dkt. 31 at 5-6. HHA terminated her on October 8, 2024. *Id.* at 6.

Tran filed this suit on January 13, 2025, Dkt. 1, and then amended her complaint. Dkt. 6. After HHA filed a motion to dismiss, Dkt. 14, this Court granted leave for Tran to file a second amended complaint, which HHA again moved to dismiss. Dkt. 20 (order granting leave to file); Dkt. 21 (second amended complaint); Dkt. 22 (motion to dismiss). After an initial conference where the Court addressed HHA's motion to dismiss, the Court gave Tran one final opportunity to plead her case. Dkt. 30 (order).

Tran then filed a third amended complaint, alleging hostile work environment and retaliation claims under Title VII of the Civil Rights Act of 1964. Dkt. 31. HHA filed another motion to dismiss, Dkt. 32, to which Tran responded, Dkt. 33, and HHA replied, Dkt. 36. The motion is ripe for resolution.

## **Legal standard**

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-

pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quotation omitted).

## Analysis

HHA moved to dismiss Tran's complaint for failure to state a claim upon which relief can be granted. Dkt. 32 at 1. It argues that Tran failed to plausibly allege an actionable Title VII hostile work environment or retaliation claim. *Id.* at 3, 9. Tran maintains that she sufficiently pleaded both claims. Dkt. 33 at 1. But as concluded below, she failed to state either claim.

### I.    Tran did not plausibly allege a hostile work environment claim.

Tran brings a hostile work environment claim against HHA based on her race and national origin. Dkt. 31 at 6-7; Dkt. 33 at 2. At the motion to dismiss stage, Tran must plausibly allege that "(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race [or national origin]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citations omitted); *see also Johnson-Lee v. Tex. A&M Univ.-Corpus Christi*, 729 F. Supp. 3d 709, 721 (S.D. Tex. 2024) (citing *Ramsey* and applying test at motion to dismiss stage). Those elements "are intentionally demanding

'to ensure that Title VII does not become a general civility code.'" *Howard v. United Parcel Serv., Inc.*, 447 F. App'x 626, 632 (5th Cir. 2011) (citation modified) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

HHA argues that Tran has not plausibly alleged elements three and four, i.e., that the harassment was based on race or national origin or affected a term, condition or privilege of employment. Dkt. 32 at 3. As concluded below, Tran's live complaint adequately links the asserted harassment to her race and national origin. But HHA is correct that Tran has not adequately alleged that the harassing conduct was severe or pervasive enough to support recovery. Tran's hostile work environment claim should be dismissed.

### A. Tran sufficiently pleaded harassment based on her race and national origin.

To sustain a Title VII hostile work environment claim, "Plaintiff must at least plead some connection between the alleged harassment and her …." protected characteristic. *Jones v. Rooms To Go*, 2020 WL 3640003, at *5 (S.D. Tex. July 6, 2020) (citing *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)). HHA argues that Tran's pleadings "ultimately amount to complaints about [her] workload" not harassment based on race. Dkt. 32 at 3-4. But this overlooks the allegations of harassment based on her Asian American identity and Vietnamese heritage. Dkt. 33 at 2.

According to the live complaint, Tran's coworkers harassed her in ways that implicated her race or national origin, including (1) mispronouncing her name, Dkt. 31 at 2, (2) mocking her accent, *id.*, (3) banning use of the Vietnamese language, *id.* at 2-3, and (4) prohibiting Vietnamese foods at office celebrations, *id.* at 3. Courts have characterized similar allegations as race or national origin discrimination. *See e.g.*, *Keeler v. Brenntag Specialties, Inc.*, 177 F. Supp. 3d 1021, 1025 (S.D. Tex. 2016) (finding it plausible that a comment about the plaintiff's accent was based on racial animus); *E.E.O.C. v. Premier Operator Servs., Inc.*, 113 F. Supp. 2d 1066, 1073 (N.D. Tex. 2000) (prohibiting non-English in the workplace reflects national-origin discrimination); *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 401 (5th Cir. 2007) (mocking a worker's diet and prayer rituals shows national-origin discrimination); *Nzabandora v. Univ. of Va.*, 2017 WL 4798920, at *3 (W.D. Va. Oct. 24, 2017) (finding hostile work environment where, among other things, co-workers criticized plaintiff's food and culture).

Tran also alleges facially neutral conduct, like hostile interactions between her and Carney, Dkt. 31 at 3-4, and alleged "sabotage[]" of her work, *id.* at 3. Tran's subjective belief that those actions were discriminatory is not enough to show that those acts were motivated by her race or national origin. *See Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1067 (5th Cir. 2023). Regardless,

7

Tran's other allegations adequately assert harassment based on race or national origin.

### B. Tran had not adequately alleged severe or pervasive harassment.

The remaining question is whether the asserted harassment rises to an actionable level. According to HHA, Tran alleges only "isolated and random" acts that are insufficient to alter the terms or conditions of her employment. Dkt. 32 at 5. Tran counters that the alleged harassment was severe and pervasive enough to create a hostile work environment. Dkt. 33 at 7.

To maintain a hostile work environment claim, the challenged conduct must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Whittington v. Harris Cnty., Tex.*, 2025 WL 1864956, at *5 (5th Cir. July 7, 2025) (quoting *Faragher*, 524 U.S. at 787). Tran pleaded that the work environment was subjectively offensive. For example, she explains that the harassment led her to seek support through her Employee Assistance Program and to take FMLA leave. Dkt. 31 at 4-5. But the conduct of which she complains does not meet the Fifth Circuit's strict standard for *objectively* offensive conduct.

"To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the

frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. No single factor is determinative." *WC&M Enters.*, 496 F.3d at 399 (internal citations omitted). "[T]he required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 442 (5th Cir. 2011).

Case law reflects that no specific act that Tran describes, on its own, is sufficiently severe to create a hostile work environment. *Compare Garcia v. Garland Indep. Sch. Dist.*, 2012 WL 4341811, at *1, 2, 6 (N.D. Tex. Aug. 29, 2012) (finding "no single incident of harassment alleged by Plaintiff," including co-workers mocking her accent and her supervisor forbidding Hispanic employees from speaking Spanish, was so severe to be sufficient on its own), *adopted by* 2012 WL 4358633 (N.D. Tex. Sept. 24, 2012); *WC&M Enters.*, 496 F.3d at 401 (co-workers mocking plaintiff's diet was not severe harassment), *with Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (reversing dismissal of hostile work environment claim because a supervisor called plaintiff the N-word in front of his fellow employees). Tran cites no authority deeming analogous conduct to constitute "severe" harassment.

Tran's hostile work environment claim therefore rises and falls on whether the conduct was sufficiently pervasive. For this standard, it is not

9

enough merely to assert that the challenged conduct happened frequently. Indeed, courts have dismissed claims that lacked adequate factual detail to show that the actions meet the legal threshold for pervasive harassment. *See Vargas v. Panini Am., Inc.*, 2025 WL 1347479, at *4 (N.D. Tex. May 8, 2025) (dismissing claim, despite plaintiff's allegation that co-workers "repeatedly" engaged in the complained of conduct, because plaintiff failed to provide sufficient detail, including how frequent the conduct was or over how long a period it occurred); *Hernandez v. Ho'olaulima Gov't Sols., LLC*, 2024 WL 3648280, at *10 (W.D. Tex. Aug. 2, 2024) (finding inadequate allegations of pervasive harassment, where the plaintiff did not provide "factual allegations detailing the conduct's prevalence"). And the Fifth Circuit has found that "one subjectively offensive utterance ... every few days" is not actionable under Title VII when the utterances "were not severe, physically threatening, or humiliating." *Steward v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (citation omitted).

Tran characterizes the challenged conduct as a "16-month campaign of" "repeated and escalating harassment" based on her race and national origin. Dkt. 33 at 6; Dkt. 31 at 5. Conspicuously lacking, however, are factual particulars regarding the frequency of the claimed harassment. *See, e.g.*, Dkt. 31 at 2 (Carney mocked Tran's accent "[i]n multiple instances"); *id.* at 6 (Tran was subjected to "repeated mispronunciation of her name"). Merely saying in

conclusory fashion that the conduct happened "multiple" times or on "repeated" occasions does not plausibly allege that it was pervasive. This is especially so because Tran worked at HHA for more than 16 months. Without specifics illuminating the conduct's frequency, Tran's attempt to depict it as an "escalating pattern" is merely rhetorical and legally conclusory.

Moreover, the exact frequency of the harassing conduct plainly lies within Tran's personal knowledge. After all, none of it would qualify as harassment unless it were directed at Tran herself. Tran's failure to provide factual specifics on this point—i.e., whether the acts occurred daily, weekly, monthly, or at some other interval—even after twice amending her pleading, reinforces that the claim fails to meet the legal standard for recovery.

Other allegations concerning disparate treatment cannot salvage Tran's hostile work environment claim. *See* Dkt. 31 at 3, 5. First, Tran has not plausibly alleged that she was treated worse than similarly situated employees of a different race or national origin. For instance, Tran complains that she was reprimanded for redirecting a staff member's request for assistance to an assistant supervisor, Dkt. 31 at 5, whereas the assistant supervisor was not reprimanded. But Tran initiated the chain of events, making her not similarly situated to the assistant supervisor to whom Tran sent the subordinate. Tran also pleads that she was once denied holiday pay that was granted to "similarly

11

situated African American employees … under the same circumstances." *Id.* at 3. That allegation is conclusory and thus inadequate.

Second, because the alleged harassment is not severe or pervasive, asserted acts of disparate treatment—even assuming they were adequately pleaded—cannot backfill Tran's hostile work environment claim. *See Vargas*, 2025 WL 1347479, at *5 (allegations that plaintiff received worse treatment than employees of a different race "cannot sustain" the hostile work environment claim when the four factors indicate that the environment was not objectively hostile); *see also Robinson v. Paulson*, 2008 WL 4692392, at *20 (S.D. Tex. Oct. 22, 2008) (disparate treatment allegations cannot "transform" conduct that is neither severe nor pervasive into a hostile work environment claim). Tran's lack of plausible allegations that the harassment was adequately severe or pervasive defeats her hostile work environment claim.

## II. The retaliation claim also fails.

HHA argues that Tran's retaliation claim should be dismissed because she has not pleaded a causal link between a protected activity and an adverse action. *See* Dkt. 32 at 9. Tran maintains that she has met the causation element because her allegations show "temporal proximity and escalating retaliatory conduct." Dkt. 33 at 9.

At the motion to dismiss stage, "a plaintiff alleging Title VII retaliation must plead facts showing: '(1) that [she] engaged in [protected] activity ...,

12

(2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action.'" *Cuellar v. Sw. Gen. Emergency Physicians, P.L.L.C.*, 656 F. App'x 707, 709 (5th Cir. 2016) (quotation omitted). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII …." *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025) (quotation omitted). And an "adverse employment action" is one "that a reasonable employee would have found … materially adverse," meaning that it was "likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers." *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (quotation omitted).

The causation requirement is aimed at "the ultimate question in a retaliation case: whether the defendant discriminated against the plaintiff *because* the plaintiff engaged in protected conduct." *Starnes v. Wallace*, 849 F.3d 627, 635 (5th Cir. 2017) (quotation omitted). At the pleading stage, a plaintiff must "allege facts permitting at least an inference of her employer's knowledge of her protected conduct in order to establish the required causal link between her conduct and the alleged retaliation." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 434 (5th Cir. 2021).

A causal link can sometimes be shown by alleging temporal proximity between the protected activity and the adverse employment action. *See Jan.*

*v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023). While not a rigid inquiry, the Fifth Circuit has found that "a time lapse of up to four months" is sufficient. *See Smith v. Kendall*, 2024 WL 4442040, at *7 (5th Cir. Oct. 8, 2024) (quoting *Evans v. City of Hou.*, 246 F.3d 344, 354 (5th Cir. 2001)).

Tran alleges two events that qualify as adverse employment actions: her September 19, 2024 placement on administrative leave and her October 8, 2024 termination. *See* Dkt. 31 at 6; *Yates v. Spring Indep. Sch. Dist.*, 115 F.4th 414, 420 (5th Cir. 2024) (placement on administrative leave can constitute an adverse employment action); *Cuellar*, 656 F. App'x at 709 ("Termination, of course, is a Title VII adverse employment action."). But Tran identifies no causal link between those actions and any protected activity.

Although the complaint alleges that Tran submitted several "internal reports to her direct supervisor … to HR representatives … and to HHA senior executives," Dkt. 31 at 7, it provides few specifics about when those reports were submitted. On October 25, 2023, Tran allegedly reported the incidents with Carney to her supervisor and then attempted to meet with that supervisor on November 20, 2023 to address the issues. *See id.* at 3-4. Those events occurred nearly a year before she was placed on leave in September 2024—far too long to infer a causal relationship between the two events. Tran also describes meetings with an HR representative leading up to her placement on

14

leave, *see id.* at 4-5, but nothing indicates that she engaged in any protected activity during these meetings.

"Absent an inference of causation due to temporal proximity," a plaintiff should plead "that the employer knew about the employee's protected activity." *Cox v. DeSoto Cnty., Miss.*, 407 F. App'x 848, 851 (5th Cir. 2011). Tran alleges that certain HR personnel and managers "knew of Plaintiff's complaints ... and escalated adverse actions against her." Dkt. 33 at 9 (citing Dkt. 31 at 7-8). But "it is well established that, 'in determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker.'" *Cox*, 407 F. App'x at 851-52 (quoting *Ackel*, 339 F.3d at 385). Tran does not allege that the HR personnel or managers to whom she complained were the ones who ultimately decided to place her on administrative leave or to terminate her employment. Dkt. 31 at 6 (alleging only that Tran "was placed on administrative leave" and "HHA terminated" her); *see Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 479 (5th Cir. 2015) (no causal link where there was an 8-10 month gap between plaintiff's complaint to HR and his termination, and plaintiff did not show that the supervisor who terminated him knew of the complaint); *Norsworthy v. Hou. Indep. Sch. Dist.*, 2022 WL 3043411, at *3 (S.D. Tex. Aug. 2, 2022) (dismissing a retaliation claim where no facts indicated that the individuals responsible for the adverse actions knew of the plaintiff's grievances).

Without sufficient allegations that Tran's complaints were close enough in time to the adverse actions, or that HHA's decisionmakers who took the adverse actions against her knew of her protected activity, Tran has not plausibly alleged that actions were causally related to any protected activity. Her retaliation claim should be dismissed.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendant Houston Housing Authority's motion to dismiss (Dkt. 32) be **GRANTED**, and that all of Plaintiff Van Tran's claims be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** *Ortiz v. City of San Antonio Fire Dep't*, **806 F.3d 822, 825 (5th Cir. 2015).**

Signed on December 19, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge